UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARDIOVASCULAR AND
THORACIC SURGEONS, INC.,          Case No. 1:10-cv-846

    Plaintiff,                              Judge Timothy S. Black

vs.

ST ELIZABETH MEDICAL
CENTER, INC., aka St. Elizabeth
Medical Center and St. Elizabeth
Healthcare,

    Defendant.

**ORDER GRANTING SUMMARY JUDGMENT ON
ALL REMAINING CLAIMS**

On September 11, 2012, the Court entered its Order granting in part and denying in part the parties' cross motions for summary judgment. (Doc. 63) . At its essence, the Court ruled that Defendant effectively terminated the parties' Agreement on March 9, 2009, but owed to Plaintiff pursuant to the parties' Agreement (Doc. 1-1, PAGEID # 25) the guaranteed monthly payments for the period October 1, 2008 through March 9, 2009.

Subsequent to the Court's Order, the parties briefed all remaining issues (Docs. 64-68).  Now, there being no material facts in dispute as to the pending issues, and the parties being entitled to judgment as a matter of law as to these issues for the reasons stated here, the Court enters this Order Granting Summary Judgment on All Remaining Claims.

**I. OFFSETS**

The Court has ordered Defendant St. Elizabeth to make the monthly guaranteed payments (the "MNRG" payments) of $66,666.67 per month to Plaintiff ("CVTS") for the period December 1, 2008 through March 9, 2009. (Doc. 63). The gross amount of these payments is $219,333.34 (*i.e.* 3.29 mos. x $66,666.67). However, Section 2.1 of the Agreement provides for an offset. The amount of the offset is equal to the amount of earnings at locations outside St. Luke Hospital ("SLH") earned by the designated CVTS surgeon. According to CVTS, for the time period in question, the amount of Dr. Manisha Patel's earnings outside SLH was $111,707.11. Therefore, the net MNRG amount of St. Elizabeth's obligation due to CVTS under the Court's Order of September 11, 2012 is $107,626.23.

CVTS incorrectly contends that St. Elizabeth "discontinued" the SLH open heart program and that therefore the offset is eliminated by the terms of the Agreement:

> ... if Hospital discontinues its cardiac surgery program, net revenues earned by Cardiac Surgeon at locations other than Hospital shall not be counted for the purposes of determining Monthly Net Revenue ... *See* Section 2.1 of the Agreement (Attachment 2 to Exhibit A of the Complaint).

Here, however, St. Elizabeth did not "discontinue" a program which never started.[1] Accordingly, the offset is not eliminated as St. Elizabeth did not "discontinue" a program

---

[1] As Dr. Vester of CVTS testified in explaining why CVTS did not maintain an office at SLH as required by the Services Agreement: "There was no point in going forward with renting the space if we didn't have a program." (R. Vester Depo., p. 57 (Doc. 32, Ex. 2)).

which never started.  Moreover, the application of the offset is supported by the parties' practice under the Agreement prior to this litigation.

## II.  PREJUDGMENT INTEREST

Under the law of Kentucky, "prejudgment interest is awarded as a matter of right on a liquidated demand, and is a matter within the discretion of the trial court or jury on unliquidated demands."  *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District*, 174 S.W.3d 440, 450 (Ky. 2005).

To be liquidated, the amount of a claim must be "capable of ascertainment by mere computation, can be established by reasonable certainty, can be ascertained in accordance with the fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." *Id.*  Here, CVTS's claims are based on liquidated amounts contained in the Agreement, less an ascertainable offset; accordingly an award of damages based on these amounts is "capable of ascertainment by mere computation" and can be "established by reasonable certainty." *Id.*  Kentucky law provides that "prejudgment interest follows as a matter of course where damages are liquidated."  *Prima Int'l Trading v. Wyant*, 2009 WL 722609, at *3 (E.D. Ky. Mar. 17, 2009).

Kentucky law provides that the legal rate of interest to be applied here is eight percent (8%) per annum.  Ky. Rev. Stat. § 360.010.  And "prejudgment interest has traditionally been simple interest."  *Id.* at *3; *Reliable Mech., Inc. v. Naylor Indus. Services, Inc.,* 125 S.W.3d 856, 858 (Ky. App. 2003).

An award of interest lies within the sound discretion of the trial court.  *Reliable, supra.; Mechanical, Inc. and Liberty Mutual Ins. Co. v. Naylor Industrial Services, Inc.,* 125 S.W.3d 856, 2003 Ky. App. LEXIS 340 (2003).

Here, in accordance with Kentucky law, and in the interest of fairness, CVTS should be awarded prejudgment interest on the amounts due under the Agreement.  Under the equities here, providing for prejudgment interest properly reduces CVTS's financial loss and compensates it for the lost opportunity to care for cardiac patients.  CVTS has waited four years to be paid under the Agreement and to deprive CVTS of interest it could have earned but for the acts of the Defendant would be in equitable.

Accordingly, CVTS is entitled to prejudgment interest on the amounts due under the Agreement.

### III.  MEDICAL DIRECTOR PAYMENTS

Section 2 of the Agreement relating to the Medical Director states that CVTS "shall be paid for the Medical Director Services ***provided*** under the Agreement .... " (emphasis added).[2]  Therefore, unlike the Cardiac Surgeon services, for which CVTS received a monthly guaranteed payment, even if it performed no services, there was no such guaranteed payment of the Medical Director fees.[3]

---

[2]  Doc. 1-1 PAGEID # 24

[3]  The Cardiac Surgeon provision of the Service Agreement guarantees compensation for CVTS' "willingness' to provide services; by contrast, to warrant payments for Medical Director fees, the Agreement requires performance of Medical Director duties, *i.e.,* that which is "provided."  *Compare* Doc. 1-1, PAGEID # 25 to Doc. 1-1, PAGEID # 24. Further, the Agreement only requires payment within 30 days of CVTS providing a monthly report, *i.e.,* reports which CVTS never provided to Defendant.

The Agreement clearly states that CVTS is entitled to payments only for services that the Medical Director actually "provided," *i.e.,* performed. Based on the language of the parties' Agreement, CVTS is not entitled to Medical Director fees for services never performed, never reported to SLH, and never billed for by CVTS.

## IV. CONCLUSION

For the reasons stated here, there being no material facts in dispute, and the parties being entitled to judgment as a matter of law on all remaining claims, *i.e.,* offsets, prejudgment interest, and Medical Director fees, the Court orders that Defendant shall pay Plaintiff the sum of $107,626.23, plus prejudgment interest at 8% simple interest per annum from when due until paid, as Cardiac Surgeon fees due under the Agreement and the Court's Order of September 11, 2012 (Doc. 63). Plaintiff is not entitled to payment of Medical Director fees.

The Clerk shall enter judgment accordingly upon the Order of September 11, 2012 and this Order; and there being no further claims pending, this case shall be **CLOSED**.[4]

**IT IS SO ORDERED.**

Date:  November 30, 2012                              *s/ Timothy S. Black*
                                                                         Timothy S. Black
                                                                         Unites States District Judge

---

[4] Defendant's motion to strike portions of Plaintiff's reply memo (Doc. 68) is denied as moot.